Good morning, Your Honors, and may it please the Court, Deputy Attorney General Paul Rode Honorable for Respondent and Appellant Cheryl Plyler. She's the warden at this time? As far as I'm aware, yes, Your Honor. These things can change fairly frequently, however. That's fine. Thank you. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Sure. On remand following the Supreme Court's decision in Plyler v. Ford, the magistrate concluded that the petitioner had been affirmatively misled by the absence of two advisements which the Supreme Court held in this very case on these very facts were not required and, in fact, should not be given. In doing so, the magistrate, in effect, purported to re-decide this case and to overturn or reverse the Supreme Court's holding. But the Supreme Court's holding on these points was the law of the case and the magistrate's reconsideration of the absence of the warnings was foreclosed by the Supreme Court's holding. The Supreme Court addressed this very issue on these facts. The very facts that the magistrate purported to rely on were before the Supreme Court in the form of a joint appendix filed by the parties. All of the filings, the petitions, the motions to stay, the orders regarding further proceedings on partially exhausted petitions, the reports and recommendations in both the 97 cases and the 98 cases were before the Supreme Court. Then why didn't the Supreme Court simply reverse? Because I think the Supreme Court Why didn't they send it back? Well, the answer to that can be found in the penultimate paragraph in the majority's opinion. The Supreme Court remanded the case for determination of whether the petitioner was affirmatively misled, quote, quite apart from the district court's failure to give the two warnings, not based upon the district court's failure to give the two warnings. That had just been decided. But on remand, that's exactly what the magistrate purported to re-decide at the urging of the petitioner. We objected below. First of all, the court, as you say, did have the whole record, so they obviously thought there was possibly something in that record that could constitute an affirmative misleading. And to my mind, the piece that wasn't in the earlier case was the fact that, first of all, this petitioner was asking various questions, was clearly trying to get said things like, but if that's going to cause a problem, I don't want to do it, and was getting somewhat confusing, at least, answers, non-responsive answers, such as, well, if you have new facts, then you can no problem, because if you have no new facts, you can allege new causes of action, which really wasn't responsive to what he had asked, and then gets a dismissal without prejudice when he had said specifically, if I'm not going to be able to come back, I don't want to do it. So the magistrate, who was the same magistrate who did it, now says, but in retrospect, I can see that he took that. He says he took it, and I understand why he took it, as meaning he's not going to have a problem. I affirm that he misled him. I said, there's not going to be a problem, which is what he understood. So why isn't that an affirmative misleading? That was actually addressed by the majority in Ford v. Hubbard. That was the basis of the majority's holding. No, the basis was that you didn't have to affirmatively tell him something, as opposed to telling him, okay, I'm dismissing it without prejudice, and there's not a problem. That's a different issue. That kind of assurance is different from you need to tell him affirmatively that there is a problem. That's different. Well, the majority in Ford said that the advice that was given to the petitioner was correct, but didn't go far enough, because the petitioner, by seeking to dismiss or, in fact, by allowing at least one of the petitions to be dismissed without prejudice, appeared to be under the mistaken belief that he could refile without regard to the statute of limitations. This was one of the very issues that was considered by the Supreme Court on certiorari. And the Supreme Court held that advice regarding the statute of limitations, advice regarding the ability to refile, was legal advice that was not required. Affirmatively required. In other words, there was no obligation to give it. But here it was asked. It wasn't a question of affirmatively giving it. It's what, in context, would be understood when you asked a question, as opposed to just sat there. It didn't just sit there. Well, I think it would still fall into the category of legal advice that courts  One of the problems of the law is that courts are not required to give. So, but that's the – if I ask you a question, like a legal question, you're at the court, and you say, I'm not required to give it, I'm not going to answer you, that's one thing. If you do answer it, and give advice which is likely to be misconstrued and was misconstrued, why isn't that another? Because the advice, as the Supreme Court held, was correct. The Supreme Court observed that the order that set forth these choices was legally correct. In fact, even the majority in Fort decided that the statements made were legally correct. They just didn't go far enough. It's not unlike Brambles v. Duncan, where the district court took it upon itself to tell Brambles that any refiling would be subject to the statute of limitations. In fact, at the time that advice was given, the statute had already expired. But yet, this court held, applying Plyler, that that was not affirmatively misleading. That was legally correct. What was misleading, if anything, the court reasoned, was what the district court didn't tell Brambles, namely, that he would be barred from refiling despite this dismissal. Kagan. But Brambles didn't ask. I'm sorry, Your Honor? Brambles did not ask. True. First of all, Brambles was told in general about the statute of limitations. Yes. But second of all, Brambles didn't ask for assurances and didn't say, if there's a problem, I won't do it. Yes. But I don't think — I think that's respectfully a difference without a distinction in this case. I really do believe that the issue is whether the advice needs to be given at all. True, the advice was given in Brambles. But that advice itself could have been regarded as misleading because it appeared to suggest to Brambles, and in fact, Brambles argued on remand, that the advice appeared to suggest that he did have time to refile, that he would, in fact, be able to comply with the statute of limitations when, in fact, the statute had expired. But this Court, nevertheless, held that that would constitute legal advice that the Court was not required to give under the holding in this case. And, Your Honor, again, all of these things were before the Supreme Court in this case. The Supreme Court decided the issue of the two warnings cognizant of all of these things. And it didn't say, well, on the facts of this case, the warnings weren't, in fact, required. It held, based upon this case and based upon its review of Ford v. Hubbard, which reached the conclusion that the warnings were required, that that was not, in fact, required under this case, that Ford v. Hubbard could not stand. It rejected Ford, and it vacated the decision. This is the conclusion of the magistrate judge. In the context of Petitioner's expressed concerns over the running of the statute of limitations and his request for a stay, the Court's response was affirmatively misleading because it gave Petitioner the false impression that his claims would not be time-barred, and gave no indication that a limitations period would apply. Now, why isn't that accurate? Leave off the last part. What about giving Petitioner the false impression that his claims would not be time-barred? I don't see where that came about in the order that the magistrate issued. In fact, in the 1990s ---- If you say to a layperson, I'm going to dismiss this without prejudice, when he's asked, he's said to you, I don't want to dismiss it if it's going to, if I'm going to end up prejudiced or time-barred. And you say, no problem, I'm going to dismiss it without prejudice. That doesn't take him to mean it's not going to be time-barred? No. The Court didn't say no problem. The Court said this is going to be dismissed without prejudice. You have a choice. You have these three choices. And one of them is dismissal without prejudice. And, in fact, the Petitioner elected to dismiss one of the proceedings without prejudice. Without prejudice simply means that the decision, a decision on the merits of the case I think, based upon the holding in Plyler, it doesn't matter. That's legal advice. You're down to under two minutes, and you wanted to save a little time for this? Yes, Your Honor. Thank you very much. Thank you for your argument. Thanks for coming in today. Counsel? Good morning, Your Honors. Lisa Bassas for Apolli and Richard Herman Ford. In Plyler, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court remanded this issue because of the possibility that Mr. Ford relied upon and was misled by the district court's representations. The district court, upon remand, has now ruled that Ford was, in fact, misled. Appellant obviously disputes that, contending that Brambles controls the disposition of the similar claim. Your opponent's argument is that the Supreme Court said quite apart from the two pieces of advice which were given, which they found to be accurate. Exactly. So what's the quite apart? Well, the quite apart are two things. Or actually, it's a number of things. First of all, as Judge Berzon mentioned, Mr. Ford expressly indicated, evinced his intention not to have his exhausted claims precluded. He wanted to, he was aware, unlike Brambles, of the jurisdictional time bar. He did not want to forfeit his right to federal review, and he wanted to choose an option that preserved his right to return once he went back to state court and exhausted his claims. He asked a series of questions. In response to, and let me go back, he also, unlike Brambles, contemporaneously with the filing of the first petitions, filed motions to stay. Those were dismissed outright because of this circuit's pre-Rinds technical requirements. But four months, it wasn't until four months later that the district court actually adjudicated Mr. Ford's petitions, finding that they were time barred. The distinction is an important one because in response to the order regarding the motions to stay, Mr. Ford evinced his distress at being, at potentially losing his right to federal review should he lose his option of exhausting. But he was assured by the court that the factual predicate of the claims only arise upon the date of discovery. It was essentially an admonition designed to assure him, but had no meaning in the context of the case. And this is a context that was materially different from Brambles, where Brambles was unaware of the time issue, never filed motions to stay. Furthermore, Ford made statements in response to the magistrate judge's OSCs, indicating his desire to take a course of action that would not prevent a forfeiture of his right to return. In his return to respondents' answer in Lee, he stated he would choose to proceed with only his exhausted claims if dismissal without prejudice would result in his exhausted claims being barred. So he manifested both by action and statements his intention to avoid a forfeiture. And notwithstanding, the court gave him the two rose options without simultaneously advising him of the pre-rose technical requirement in connection with the stay motions that he had previously brought. Now, I agree with counsel that there is no right to proactively advise a pro se prisoner litigant of his rights. That was established by Clyler. But that's not what we have here. What we have here is a series of questions designed to preserve Mr. Ford's right to Federal review of all of his claims, both the exhausted claims as well as the and misleading statements by the magistrate judge that lulled Mr. Ford into believing that the second rose choice of a dismissal without prejudice would effectively be a dismissal which wasn't, in fact, a dismissal with prejudice. It doesn't, establishing a ruling along that line, place a burden upon district judges to sort of assess who's in front of them and correct their misunderstandings or misapprehensions. Not at all. This circuit has law in effect which states the trial courts have a duty to provide pro se litigants with notice of complaint deficiencies and an opportunity to correct them. I believe that where someone such as Mr. Ford files a motion to stay, he's convincing his intention to avoid a forfeiture of his right to Federal review, and he files a motion to stay, but the procedure that he follows is imperfect, and he's not aware of those technical requirements. A district court, in accordance with existing case law, must apprise the defendant of the deficiencies and give him an opportunity to correct them. This is completely distinct from the situation in Bramble's where Bramble said that he was affirmatively misled, and as this Court found, based on what he wasn't told. So you need sort of a Miranda warning check, Feretta type checklist? No. I think what you need is action by the defendant indicating he intends to elect a certain procedural course, and if it's done improperly, I don't believe a court can just say. What exactly are you saying was misleading? It would help me to know that. First of all, in failing to address Ford's concerns. That's failing to address. You say we need something affirmative. That is misleading. I think what was misleading is the suggestion in response to Ford's opposition to the OSCs in reference to his stay motions, see if I can find it, that the one-year limitations period only began to run when the factual predicate of the claim could have been discovered. Now, he asked a direct he indicated in his response he was concerned that if the stay was denied, he would be foreclosed from his right to Federal review. The response provided was provided as an assurance, and the State indicated in its return that that practice would apply, and the magistrate judge said he was aware and assured Ford that the one-year limitations period only begins to run when the factual predicate of the claim could have been discovered. In view of this statement, the default option the Court chose of if Mr. Ford did not respond was the default of a dismissal with prejudice, made his confusion over the options. Without prejudice, dismissal without prejudice. I'm sorry, yes. The default option made, exacerbated his confusion and suggested to Ford that a dismissal You don't ultimately have to say that what was misleading was the without prejudice. I think so. I mean, isn't that ultimately what was affirmed as misleading? That's one of the things. I think one of the other things is that the Court, in affording Ford his options, didn't provide Ford with notification of the pre-Rein's technical requirement. But that's what the Supreme Court case, in other words, what I'm trying to separate out is the Supreme Court seems to say that what he did say can't be it. It has to be what he did say. I believe it's broader than that. I believe that, first of all, the Court said. And Bramble certainly says what he didn't say can't be it. Right. But what the Court said is that a district court is not required to give affirmative advice to prosecutors. Right. And in particular, the fact that he didn't say that the limitations period was about to run out, or did run out, or the fact that he didn't say that there was another option, either the Kelly, then Kelly option, or now Rein's option. Neither of those, it seems to me, can be it, from what the Supreme Court said and what Bramble says. Well, I believe that what happened, first of all, what happened in Bramble's, the Court did give Bramble's an admonishment not present here, that the limitations that Bramble's need be aware of 2244's limitations requirement, and it could impact his right of return. That is something that wasn't given here. On the other hand, Ford was aware that there was a time problem. He didn't know how it worked. And he attempted to do everything within his power to preserve his right of return, or at least, if nothing else, not foreclose review of the already exhausted claims. And I do agree with you, Your Honor, that the with prejudice. Without prejudice. Pardon? Without prejudice. I'm sorry. Here we go again. The without prejudice option was affirmatively misleading in the context of this case, given all of Ford's requests for assurances and requests for information and the questions and the indications that he wished to preserve his right to Federal review of all of his claims. One last question. What is our standard of review here? The district court, the magistrate judge who issued the order and was there has held or says essentially that, that in the context, the without prejudice statement was misleading. I believe that. Now, just a minute. Are we reviewing that for a clear error? Are we reviewing it de novo? Or what are we doing with it? I believe it's for abuse of discretion. But it's a factual statement. It doesn't seem like it's a – it doesn't seem like – or discretion doesn't sound like the right word for it. It's not just a factual statement. The issue is whether or not the court was correct in the options it presented to Mr. Ford.  The question is whether the current conclusion that this was misleading is to be upheld or reversed and whether that's going to be treated as a fact or not treated as a fact. Well, I can do some briefing on the issue. This is the standard of review. You're over your time. Okay. Thank you. Thank you for your argument, counsel. All right. Thank you very much, Your Honor. Rebuttal. Suppose Ford had, after the judge had said, without prejudice had said, does that mean I can refile and my claims will still be live ones? And the judge had said, I said it would be without prejudice. Would that be affirmatively misleading? No, because I think what this gets to – and in our first argument before Ninth Circuit, which gave rise to the decision in Ford, one of the things that was focused on was the without prejudice language. And isn't that affirmatively misleading, without prejudice? Because really, he couldn't come back unless he could demonstrate equitable tolling. But that in and of itself is not affirmatively misleading. And if the question were asked, as posited by Your Honor, the district court I don't think would have any obligation to answer that more specifically because to do so, as the Supreme Court noted in this case, would require a court to calculate the statute of limitations. So as long as the response from the court or the advice from the court is technically accurate, it matters not how misleading it is? Well, I think – I don't know that I quite characterize it that way. I think as the Brambles Court characterized it, as long as it is legally correct, technically accurate, the court doesn't have to supplement that with legal advice. But what about my limitation, my statute of review question? How are we reviewing this? I think it's de novo review because I think the facts, underlying facts are undisputed. I think the magistrate's conclusion based on those facts is something that can be reviewed de novo because of the situation here where the underlying facts of procedural history, the documents upon which the magistrate relies, are undisputed. But the question of whether it was actually misled would have to be a fact that was reviewable for clear error, right? Yes. And I think in response to that question, if I could make one point that I didn't get a chance to make previously. In the 1998 proceedings, which the magistrate dismissed as untimely, he noted in his report and recommendation that the Petitioner appeared to believe that the pendency of the Federal proceedings, in the 1997 proceedings, somehow told the statute of limitations. Now ---- It wasn't too crazy because we did too. I'm sorry? It wasn't such a strange belief given the fact that that was the law in the circuit at the time. Well, under Duncan v. I understand that, but it certainly was not a strange belief. Yes, yes. Okay. You're out of time. Thank you. Thank you for arguing. Thank you both for coming in. Very interesting case. It will be submitted for decision. National Railroad Passenger Corporation has been previously submitted. We'll now turn to AG v. Placentia Yorba Linda Unified School District. Counsel are present.
judges: Hawkins, Berzon, Clifton